I'm going to call the third case, Ellis Vs. Ethicon. Mr. Dee? Yes, Your Honor. May it please the Court, my name is Frank Dee from McElroy Deutsch and I represent Appellant Ethicon Inc. in this matter. With the Court's permission, I'd like to reserve four minutes for rebuttal. Yes, sir. Upon reflection in preparing for this argument, it became clear to me that our points one and two in our opening brief are really intertwined and really should be Really what? considered together. So I'd like to address those two points and focus on that because I think that's the core of our argument. And I can boil down those two points to four sentences. One, the parties were engaged through their representatives. And when I say through their representatives, the chosen lawyer by plaintiff and her husband and Ethicon's attorney. But they were engaged in an agreed upon process, an interactive process that was agreed upon, in which both parties were waiting for the plaintiff to get clarified medical restrictions from her doctor. So that's point one. The second point is that plaintiff didn't provide the information that both her lawyer and Ethicon's lawyer thought would be forthcoming. You're basically arguing that the jury got it wrong. I'm sorry? You're basically arguing that the jury got it wrong. Well, I'm arguing two things, Your Honor. The issue was squarely presented by the jury whether Ethicon engaged in the interactive process or not. It was really a binary decision, yeah or no. I'm saying the jury got it wrong, but I'm saying the jury got it wrong and it ought to be reversed for two reasons. One, the jury got it wrong because the evidence as to the agreed upon process, the interactive process, that was agreed upon by Ethicon and Ellis' lawyers was uncontradicted. That evidence was uncontradicted. What was the agreed upon procedure? I thought they just were passing information back and forth. No, no, no. The agreed upon procedure was that plaintiff, Nicola H. I can never pronounce her last name. And Lisa Warren from Ethicon agreed that Nicola H. was going to go back to the plaintiff. The plaintiff was going to get, address whether there was any flexibility and have revised restrictions, medical restrictions from the doctor. And then they were going to come back and then they were going to talk about it. That's the interactive process. That's precisely what the interactive process is all about. And that was agreed upon. And Ethicon's sitting there, Lisa Warren is sitting there, expecting that plaintiff is going to come back with an answer on that question in terms of the medical restrictions. Now, wouldn't your friends across the aisle say, well, no, actually, we made an offer. It was rejected out of hand. And then we were basically terminated. And that's all you need to know. No, that's not true. And you need to look at the chronology you're on. I'm talking about that. We have to keep our reference point. It's with the jury thought. I know. I've read your brief. But it's with the jury. I mean, you've got a fairly high hill to climb here. You know, there has to be nothing that would support the jury's finding. I understand that. I understand that. I accept that. And I accept that challenge. But when you look at the facts, the jury's got to base its decision on the evidence. It just can't grab it out of thin air. When you accept the unrefuted, uncontradicted evidence that Lisa Warren and Ellis's lawyers were talking about getting revised restrictions, and then you couple that with the fact that I wasn't able to cross-examine the plaintiff or present evidence that I should have been able to present through her lawyer because of the attorney-client privilege, whereas the plaintiff and her husband are getting on a witness stand and telling the jury, I didn't know what was going on. Yeah, but didn't Judge Wolfson try to – didn't she save that situation by, you know, instruction to the jury about communications to counsel are actually communications to the actual client? You have to impute the knowledge, you know, across that. I think she tried to do it. Okay. Okay? I think she tried to do it, but it didn't work. And she even acknowledged that it didn't work because in her opinion on the post-trial motions, she in fact said that plaintiff – the jury could have found that plaintiff was – thought that Ethicon was unwilling to discuss further accommodations. And had I been able to get the evidencing that I wanted that was blocked by the attorney-client privilege when plaintiff put that in issue through her own chosen representative, had I been able to get that in evidence, I could have proven that that was a lie. Did she also say that I didn't know what my lawyers had been talking about in terms of the accommodations? Yes. Yes. And I think what happened – Why did the jury believe that lock, stock and barrel? I'm sorry? Why did the jury believe that lock, stock and barrel, that she didn't talk to her lawyers? I think – Or her lawyers didn't tell her? That's exactly why I say that my points one and two need to be discussed together. Because what happened here is because I was hamstrung, because of the attorney-client privilege, plaintiff was permitted to say I didn't know what my lawyers were talking about. I didn't know there was a part-time job offer. I didn't know that Lisa Warren and my lawyers were talking about getting additional medical information and that they were willing to sit down and talk about it. That's the key point, and that's the core issue in this case, and that's why this judgment ought to be entered for Ethicon or at least a new trial. Because that's – when you put those two issues together, the unrebutted evidence that the parties, through their representatives, were engaging in a read-upon interactive process, and then you have the plaintiff, over my objection, being permitted to say that they didn't know what was going on between their chosen representative and Ethicon, and I can't get into that and show that that's a lie the way I should have been able to, because they waived the privilege. Had I been able to do that, then I think we would have had a different verdict. Was other evidence – was other evidence presented in the case to establish what conversations were had between counsel and Ms. Ellis? Well, of course, Lisa Warren testified, and her testimony was uncontradicted, and her notes were introduced in evidence that supported her position. So you had some evidence that was able to rebut what the plaintiff was saying in her case? That's right. I did, but permitting the plaintiff and her husband to drive home the fact that they didn't know what their lawyer was talking about, and as I said, you need to look at Judge Wilson's own statement. She concluded in denying my motion, post-trial motion, that in fact the jury could have concluded that plaintiffs thought Ethicon was unwilling to discuss further accommodations, which is the furthest from the truth, and had I been able to drive that home on cross-examination and convince the jury that they were lying about that, we would have had a different result. I'm convinced of that. You're looking for a new trial, I assume. I'm looking for a judgment for Ethicon, but in the alternative, I'm looking for a new trial. Talk about, a little bit here, about whether or not you make the argument on your post-trial motions, sought a judgment on a matter of law, and a couple of points, but talk a little bit about whether or not you think the plaintiff was qualified. Well, I think there's two points there, Your Honor. One, it's plaintiff's obligation to prove that she was qualified, and it's her obligation to prove that she was disabled. On the qualification issue, the only evidence in the record as to her qualifications was that she needed, her doctor said she needed to work from home three days a week on a permanent basis. And I know there's this issue about was it permanent, Dr. Mon versus Dr. Watson, but the fact of the matter is it was Dr. Mon who was the return-to-work doctor. He was the one who was making the call on what her restrictions were returning to work. It's very difficult to assess this because that precise question was put to the jury. Was she qualified? The jury said yes. But you're re-arguing the evidence presented to the jury. Yes, I'm re-arguing. You're arguing essentially that evidence was just not sufficient to support the jury's verdict. Exactly. Exactly. Because it's uncontradicted. The evidence is a matter of law. The facts are undisputed that the company would have had to have reassigned the core functions of the job. Yeah, but didn't Travers say, well, perhaps we could have assigned some of those, and couldn't the jury have concluded from that statement that perhaps some of those reassigned duties were not essential functions? No, no. What they could have concluded was that since Travers was willing to do it on a temporary basis, that she should have done it on a permanent basis. And that would have been an error as a matter of law. There is no requirement. It's requiring more than the company is required to do. The law is clear that if the company is willing to do more than the law requires, that doesn't mean that the company has to do that. And that was an issue where perhaps the jury did get confused on that issue. Okay. I agree with you. We'll get you back on rebuttal, Mr. King. Thank you. Thank you. Mr. Foreman. Judge Fuentes, and may it please the court. First, I want to thank the court for giving the clinic an opportunity to work on this case while not representing Ms. Ellis personally, representing her interests. Unfortunately, all the students that worked on this have now graduated and are studying for the bar, have not been barred, so I didn't have an opportunity to try to have one of them. But I thank you for the opportunity to do that. This court has a long record. And, in fact, Judge Chagares, in the Eshelman case, you wrote an opinion. Judge Fisher, you joined that opinion where you said pretty much what you just said. Where the record is critically deficient of the minimum quantum of evidence in support of the verdict. And I like your words better. Where there's nothing in the record to support the jury verdict. That's when you revisit the jury verdict. Here, on every point that they have raised, we believe, not there's substantial evidence on most points. And on the point that my colleague says is the critical point. The interactive process and the attorney-client privilege issue. Judge Wolfson, on an early motion for summary judgment, thought the evidence was so compelling that she entered judgment as a matter of law in support of Ms. Ellis. And then Ethicon says, but wait, Your Honor. There's a question of fact. That is a question of fact. And Judge Wolfson reconsidered, sent that issue to the jury. And the jury then concluded, Judge Fuente, as you said, very specifically that they failed to engage in the interactive process. And then Ethicon comes back and says, but no, no. It's really a question of law. Judge Wolfson got it right. The jury got it right. I want to respond. Could you talk a little bit about the fact that there was an offer made to her, an offer of part-time work that she rejected. There was subsequently an offer of her job back. You can have your job back. She said no. Twice. Once, I think there were two different levels that she worked at. Both levels were offered to her, and she said no. Well, just so there's no confusion, and I want to make sure I'm answering your question, there are two separate issues. There's the part-time job offer, which the jury heard and rejected as a reasonable accommodation or reasonable engagement in the interactive process. But in terms of the interactive process, there is a process there where Ethicon says, look, how about this? Why don't you study this and get back to me? And on two separate occasions, she didn't get back to the employer. Again, Your Honor, I don't want to fight on the record. I just want to make sure. You can fight on the record. That's okay. All right. I'll fight on the record. Moving to relief, there's evidence that after there was an order of reinstatement, there were two offers. Post-verdict. Post-verdict. There were two offers of two jobs. This is on the remedy issue. On the remedy issues. But back to the interactive process, which this circuit has, again, recognized how important it is, Judge Fuentes, in the disabled in action case. You talked about the ADA being a comprehensive mandate. But let me walk the court through this, the issue that I think is the heart of the issue. Their point is the jury must have accepted Ms. Ellis' testimony that she didn't know about a part-time job offer. Rather than invade the attorney-client privilege, the judge, Wolfson, gave an imputation instruction, and it couldn't be clearer. In addition to considering any communications between the parties regarding the accommodations in 2001, you should consider any communication between the attorneys regarding accommodations. Attorneys are agents of their clients, et cetera. This circuit, in several cases, has ruled that if you give a correct jury instruction, we will presume that the jury follows that instruction. They have not adapted to that jury instruction. Indeed, if you move to Mr. D's closing argument, Mr. D's closing argument says, and I'm reading from the record of Joint Appendix 157, 16 to 24. Now, as the judge told you, this is as if it was being offered directly to the plaintiff because lawyers are agents of the clients. He goes on to say, it doesn't matter if Ms. Ellis says, hey, I didn't know about it. My lawyer didn't tell me. That doesn't matter as the judge instructed you. Taking it a step further, Ms. Ellis' counsel, in her closing argument, at page 1606 of the Joint Appendix, line 9 to 18, really summed up what this part-time job offer was and says, and Lisa Warren doesn't meet. She doesn't answer the question. She doesn't try to come up with an accommodation to put Teresa back to work. What she does, and this is an important thing, she acts like this is some great thing, is she offers her a part-time job. And I submit to you that a part-time job is not a reasonable accommodation unless they've exhausted the possibility of putting her back to work in a full-time job. That closing argument exactly tracks the jury instruction, but yet Ethicon continues to offer. Had she submitted a proposal? I mean, in terms of the interactive process, did she say to the employer, this is what I can do? This is what we can work? This is what will work? Through her doctors, she came back and said, because of the substantial limitations of my condition, I need to work home three days a week, and I need a job coach, loosely summarized. And the response was, we can't do that. You are being processed for long-term disability, which is the functional equivalent of termination. And at that point, she was terminated from the job. On another level, we cover this. When you say she was terminated, there was no actual letter saying you're hereby terminated, right? There was no actual letter saying she was terminated, but the record is very clear on that point. I mean, is the operative time or date when she goes on to full-time disability, or long-term disability, rather? That's when her job ended. And in fact, if I could refer to Joint Appendix 486, and this is one of the correspondence prior to the termination from Ethicon's medical manager, where she says at the bottom, please help as soon as possible so the plaintiff does not have to go to straight long-term disability and, quote, lose her job. So I think that's a pretty firm statement that her job was terminated. She's in a different state. But the one point I don't want to lose is that Ethicon's argument is, despite their very crystal closing, despite the jury's instruction, saying, but the jury must have been confused. But the jury wasn't confused. If you go to the Joint Appendix 219, the jury came back with a very specific question. And their question was, would the accommodation have to have been proposed prior to October 22nd, that's the date she went on long-term disability, in order to be considered as an accommodation? Or can we consider any accommodation proposed on or after October 22nd? Very clear question, not indicating much confusion. The judge says, October 22nd is not a cutoff date. It is for you, the jury, to decide whether any accommodations proposed, including after October 22nd. The only thing that happened after October 22nd is the part-time job offer were part of the interactive process. Based upon that very clear understanding, the jury says they failed to engage in the interactive process. Let me ask you a question. What evidence is there in the record as to why the plaintiff did not give the medical information that was asked for, the later medical information that was asked for? Or was there no evidence on that? There's not significant evidence as to what was happening. I think the testimony was Ms. Ellis thought she was terminated. And there is a point we left. Did she testify to that? That's what I'm asking you. In all honesty, I don't want to mislead the court. I would have to go double-check. What I do know is that one of the things that Ms. Ellis talked about was once the doctor came forward with the restrictions, she was now being forced into a retirement. And the point I don't want to lose, it's in a brief, but I don't want to belabor it because my clock is ticking very quickly. And I do want to get the relief, is we actually don't believe that the interaction between Ms. Warren and Ms. Ellis' counsel is an interactive process at all. Because the chronology was basically telling the employee, whatever your doctor's proposed, we can't do. That's not, we're not going to do. Ms. Ellis then has an attorney that writes to counsel for Ethicon and says, you need to accommodate her. And then there's a discussion. Our position is that's not the interactive process. That's settlement discussion, and we don't want to turn the ADA into a vehicle where we don't accommodate, but once somebody lawyers up, then we'll seriously consider reasonable accommodation. The jury properly rejected that. I want to turn in the limited time that I have. Mr. Foreman, let me direct you to a point I ask opposing counsel about. Talk about whether or not Ms. Ellis was qualified. The record, we believe the jury's determination was she's qualified. There's record evidence supporting that. And if you go through her work history, Ms. Ellis wasn't just a good employee. She was an excellent employee until the disability. I'm not sure that that has any relevance to the question of whether or not she was able to perform the essential function of the job. Travers said we could get somebody for a while, but there was an essential function. And was there enough evidence in the record that was presented that the jury could conclude that she was qualified to perform that essential function? And if there was not, you know, is in this case, don't we have to reverse this as a matter of law on the basis of a lack of qualification? No, Your Honor. And, indeed, there's evidence from Ms. Travers saying two things, two things that are very important, and they all relate to the interactive process. The first one is that, well, I could have probably done this on a limited time basis, assigned some job duties. That is a reasonable accommodation. Now, whether that would become permanent, we don't know because there was never the interactive process. There was never a discussion with Ms. Ellis, could you do this? Wait a minute. You're getting hung up on this interactive process. It's important. But if she's not qualified, the absence or the failure to comply with an interactive process doesn't matter. But, Your Honor, the point, the reason I get hung up on the interactive process is part of the interactive process is to identify specifically the central functions of the job, and then with reasonable accommodation, can you do that? Because of Ethicon's failure to engage in the interactive process, we have them basically saying that being there seven days a week or five days a week is the essential function of the job. But the jury heard that, heard her qualifications, and came back with a finding. But on that point, there was never a discussion as to whether that was truly a central function of the job. And our brief discusses that in pretty great detail in terms of what the evidence supporting, and I would be really remiss in not representing Ms. Ellis' interest if I didn't at least get to the relief, which I think is the important part. And, again, citing Eshelman, that this two of you on the Eshelman case have a term in there that you have given, the ADA has given district judges great discretion to craft, quote, a just result. What's wrong with reinstatement? Pardon? What's wrong with reinstatement, that's what she decided. Absolutely nothing. We agree. You think, I mean, there's an extraordinary amount of disharmony and ill will that jumps out from the pages of the briefs. You think that's a good idea? I think it was at the time that Judge Wolfson heard this case, heard all the testimony, and was left with the conclusion, should I adopt the front pay, the advisory front pay verdict of almost a million dollars, or should I order reinstatement? And her determination was reinstatement was the best determination of how to make Ms. Ellis whole. Now, getting to what I view as the hardest part of this case, here we are 10 years after Ms. Ellis was terminated, basically four years after the reinstatement order, with a condition that is fluid, a medical condition that is fluid, and in Ethicon's position, a business situation that is changing. How does this court achieve justice? And our proposal won. We submitted, if I could have just a few minutes to wrap up so I could get to this, Your Honor. Would you add two minutes? The one proposal we floated was to put an end to this litigation, recognize there seems to be a total disconnect between the parties here, was to adopt the advisory verdict, order front pay, and put an end to this case. Ethicon objected vehemently in their briefs. We withdrew that and said the preferred remedy now is to respect the jury verdict, make a finding of liability, approve that, approve all Judge Wolfson's remedies, the $50,000, everything that she ordered, and order immediate reinstatement with one caveat, a limited hearing on how much she is entitled to receive from the time that their motion to stay the reinstatement order until the actual reinstatement. So you're running from about 2010 to the present. Have a factual hearing on that, not the emergency contempt hearing that Judge Sheraton, but have a limited determination on that. They will, of course, argue that they already complied with the order and she's entitled to limited amounts of damages, but at least there will be a factual record from a district court to be able to make that determination and some amount of justice would be accomplished. In closing, Judge Fisher, you wrote a recent law review article that appeared in the Villanova Law Review, and you say the law that bears no relation to the world we live in lacks any semblance of rationality, and good law requires validation through comparison with actual judgments. That's what the jury did here. They heard real life. They applied, and then Judge Wilson applied the law meticulously to try to give some justice to that, and we are asking this court to respect the jury's function here, respect the jury's factual finding, and grapple with the hard issue of how do you give Ms. Ellis some amount of justice 10 years after the fact? And unless you have any other questions, thank you, Your Honor. Okay. Thank you, Mr. Foreman. Mr. Deet? Thank you, Your Honor. A couple of things. First of all, I'm not quarreling with the standard that this circuit has established in terms of setting aside a jury verdict. I recognize that standard. I recognize I have an uphill battle, but when I'm talking about the jury verdict, or however you put it, the jury got it wrong, I'm talking about there not being a scintilla of evidence to support the jury verdict on a number of these issues. One, counsel says nothing happened after October 22nd other than the part-time job offer. That's not true. The agreed upon process, the way Ethicon through Lisa Warren left it with the way Nicola H thought it was going to be handled was that plaintiff would go and address the restrictions with her doctor and see if there's some flexibility. And the whole concept was that then they would come back with whatever information and then they would discuss it from there. Until that happened, it was premature to be discussing any other alternatives. The part-time offer was not the end-all and be-all. It was a legitimate, good-faith offer, and the plaintiff rejected it, and that's fine. Ethicon still continued the conversation with Nicola H, plaintiff's chosen representatives, not ours, her chosen representatives, with the idea of trying to explore alternatives. And that's what the interactive process is all about. That's what they were doing. And just imagine what was going on here, okay? The way this plays out, and you have to look at the timing, I suggest, okay, you have plaintiff and her doctors dragging their feet towards the end of the leave period, and they do not give the medical information, the final medical information, to Kemper until October 12th. On October 15th, and October 12th was a Friday, on the following Monday, Melissa Stretch gets back to them, tries to reach them to discuss it with them. They're not reachable. Sends them an e-mail telling them that they were trying to reach it. I don't want to cut you off too much, but hypothetically speaking, if we were to affirm the verdict, we have to reach remedies. Could you spend a little time responding to Mr. Foreman's argument respecting the remedy? Well, first of all, in terms of the back pay and front pay, Judge Wilson properly decided that plaintiff's back pay was cut off because she abandoned the workforce and that she wasn't entitled to front pay. That was not appealed. Plaintiff did not appeal that, so that can't be disturbed. In terms of the reinstatement issue, we offered reinstatement twice, and they rejected it. She rejected it. I don't know what we're supposed to do. But getting back to this issue of the interactive process, what happened here, and had I been able to, you know, after they opened up the door, saying that they didn't know what their lawyers were talking to Ethicon about, okay, if I had been able to show and produce evidence to cross-examine properly, to introduce all the notes, et cetera, because they waived the privilege, I would have been able to show that it was plaintiff who interrupted the interactive process. But what about the jury instruction? That doesn't solve the problem, Your Honor. That really doesn't solve the problem because if it had, if the jury had listened to that instruction and understood it correctly, okay, then why was Judge Wilson saying, well, maybe the jury believed that plaintiff thought that Ethicon was not willing to discuss further accommodations, when, in fact, the undisputed evidence, if you accept the discussions between lawyers, the undisputed evidence was that, in fact, Ethicon was willing to discuss further accommodations, and Ethicon was waiting for the plaintiff to get back, and had I been able to get into all that, despite the attorney-client privilege, which was waived, I would have been able to show that, in fact, what they were doing, she and her husband, was stringing us along so that she could get a better job at Aventus. Okay, I'm going to finish up, Mr. D. Thank you, Your Honor. That's it? Okay, good. Mr. D., thank you very much. Mr. Foreman, as well, thank you. We'll take the case under advisement.